**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Ordont Orthodontic Laboratories, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-00468-SEP |
| | ) | |
| Ortho Solutions, LC d/b/a DynaFlex | ) | |
| | ) | |
| Defendant. | ) | |

## OPPOSITION TO MOTION TO DISQUALIFY

### I.    INTRODUCTION

Plaintiff Ordont Orthodontic Laboratories, Inc. ("Ordont") has knowingly litigated this trademark dispute opposite Lewis Rice LLC ("Lewis Rice") as Defendant Ortho Solutions, LC d/b/a DynaFlex's ("DynaFlex") counsel since at least a year ago in August of 2022, when Ordont sent its cease and desist letter regarding DynaFlex's SMILESHARE trademark directly ***to Lewis Rice***.  A month later, Ordont inquired about the possibility of a conflict of interest, to which Lewis Rice promptly responded that no conflict existed in Lewis Rice's continued representation of DynaFlex. Among prolific interactions with Lewis Rice over the course of the next nine months, Ordont took no action to challenge Lewis Rice's ongoing representation of DynaFlex in this trademark dispute.  Instead, Ordont proceeded to reach out to, direct correspondence to, accept discovery requests from, serve litigation papers on, negotiate settlement with, and otherwise actively treat Lewis Rice as DynaFlex's appropriate, chosen counsel over thirty (30) times, including an in-person mediation with a Lewis Rice attorney present. Then, suddenly, after Lewis Rice filed DynaFlex's Motion to Dismiss [ECF Nos. 13-14] and on the eve of having to address the substance of its meritless trademark infringement claims in this Court, Ordont moved to disqualify Lewis Rice as counsel for DynaFlex herein.

This is a clear instance of a party attempting to use disqualification as an improper litigation stratagem. Litigants such as Ordont who, having full knowledge of the representation in question, delay seeking disqualification until they believe it to be most strategically advantageous, are rightfully precluded from doing so. Because Ordont long delayed and therefore waived objection to Lewis Rice's representation of DynaFlex in this case, this Court should deny Ordont's Motion.

That said, Ordont's Motion fares no better on the merits. Lewis Rice's previous labor and employment-centric representation of Ordont, and fleeting knowledge of generic, now stale, and otherwise irrelevant financial information, had nothing to do with any trademark issues, let alone the same matter or a substantially related matter to this trademark dispute about the parties' respective SMILESERIES and SMILESHARE marks (which will ultimately be judged in comparison to the use of the crowded field of SMILE-based marks in the dental and orthodontic fields). Lewis Rice's current representation of DynaFlex is well outside the prohibitions of the Rules of Professional Conduct for a former client like Ordont. Indeed, it is undisputed Lewis Rice has **never** represented Ordont in **any** trademark matters. Instead, since 1960, Ordont continuously used the services of other law firms and third-party service providers, including the Armstrong Teasdale law firm, for trademark work, as evidenced by the public trademark records of the United States Patent and Trademark Office ("USPTO"). Thus, in addition to Lewis Rice never representing Ordont in trademark matters, Lewis Rice had no expectation it ever would given Ordont's publicly known retention of other attorneys for such trademark matters.

Under these circumstances, characterizing Lewis Rice as Ordont's "general counsel" is hyperbole and misleading. Lewis Rice properly declined to take on a new representation of its former client, Ordont, in December of 2021 when Ordont reached out asking that Lewis Rice represent it, for the first time, in a trademark matter.

For these reasons, and as explained further herein, the Court should deny DynaFlex's Motion forthwith.

## II.    <u>STANDARD OF LAW</u>

"Motions to disqualify counsel are generally disfavored." *In re Metoprolol Succinate Patent Litig.*, No. 4:03-CV-592 RWS, 2005 WL 1661509, at *2 (E.D. Mo. July 8, 2005). "Because of the potential for abuse by opposing counsel, disqualification motions should be subjected to particularly strict scrutiny." *Awnings v. Fullerton*, 912 F.3d 1089, 1095 (8th Cir. 2019) (cleaned up) (quoting *Macheca Transp. Co. v. Philadelphia Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006). "This is because disqualification often results in increased expenses, delay in resolution of the proceedings, and always deprives a party of its choice of counsel." *Williams v. Cent. Transp. Int'l, Inc.*, No. 4:13-CV-2009 CEJ, 2014 WL 5823112, at *1 (E.D. Mo. Nov. 7, 2014) (cleaned up). "A party's right to select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." *Macheca Transp.*, 463 F.3d at 833 (internal quotation omitted).

When analyzing a request for disqualification, it must first and foremost be timely, because a "timeliness requirement ensures that the Rules of Professional Conduct are applied for their intended purpose, to regulate the conduct of counsel, and not as a weapon against an attorney's client." *Enslein v. Di Mase*, No. 16-09020-CV-W-ODS, 2018 WL 1426361, at *1 (W.D. Mo. Mar. 22, 2018) (quoting *Polish Roman Catholic St. Stanislaus Parish v. Hettenbach*, 303 S.W.3d 591, 599 (Mo. Ct. App. 2010) ("*St. Stanislaus*")). If found timely, the Court's analysis then includes a two-step inquiry. First, the Court must "determine whether counsel violated a rule of professional conduct." *In re Metroprolol Succinate Patent Litig.*, 2005 WL 1661509, at *2. If so, then the Court must "determine whether disqualification is an appropriate sanction for the violation," *id.*,

because "an attorney's conduct threatens to work a *continuing* taint on the litigation and trial," *Conway v. Specified Credit Ass'n 1, Inc.*, 4:13-cv-1821-CEJ, 2013 WL 5777025, at *1 (E.D. Mo. Oct. 25, 2013) (emphasis added); *Zurich Am. Ins. Co. v. Fluor Corp.*, No. 4:16-CV-429 ERW, 2016 WL 6083829, at *2 (E.D. Mo. Oct. 18, 2016) (same). Here, the Motion is untimely and even if it was timely, there is no conflict of interest, no violation of a rule of professional conduct, and no justification for disqualification.

## III.   **ANALYSIS**

Ordont contends Lewis Rice's representation of DynaFlex in this trademark case violates Missouri Rule 4-1.9, alleging that Lewis Rice's former representation of Ordont involved the same matter as, or a matter substantially related to, this trademark dispute. Ordont is incorrect. Lewis Rice never represented Ordont on *any* trademark matters, much less this dispute. Moreover, as a preliminary matter, Ordont's strategically motivated Motion is untimely and should therefore be denied under controlling Eighth Circuit precedent and consistent with Missouri law.

### A.  **Ordont's Motion Is Untimely and Waived.**

Litigants are "not allow[ed] to delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of a case has been completed." *Cent. Milk Prods. Co-op. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 992 (8th Cir. 1978); *accord Terre Du Lac Prop. Owners' Ass'n, Inc. v. Shrum*, 661 S.W.2d 45, 48 (Mo. Ct. App. 1983). "The Eighth Circuit has held that waiver alone is a valid basis for the denial of a motion to disqualify." *Enslein*, 2018 WL 1426361, at *1 (citing *Cent. Milk Prods. Coop*, 573 F.2d at 992); *accord Geissal v. Moore Med. Corp.*, 92 F. Supp. 2d 945, 946 (E.D. Mo. 2000). So too have Missouri courts. *See, e.g.*, *St. Stanislaus*, 303 S.W.3d at 599 ("A party who knowingly refrains from asserting a prompt objection to opposing counsel is deemed to have waived the objection." (citation omitted)).

Although courts frequently examine the length of the delay in bringing the motion and the prejudice that would result if granted in assessing waiver, in *Geissal v. Moore Med. Corp.*, the court viewed the issue through the lens of a more specific, five-factor test:

> (1) the length of the delay in bringing the motion to disqualify, (2) when the movant learned of the conflict, (3) whether the movant was represented by counsel during the delay, (4) why the delay occurred[,] and (5) whether disqualification would result in prejudice to the non-moving party.

92 F. Supp. 2d at 946 (quoting *Alexander v. Primerica Holdings, Inc.,* 822 F. Supp. 1099, 1115 (D.N.J. 1993)). In addition, when applying this test (or otherwise), particular "consideration should be given and inquiry made as to whether the motion was delayed for tactical reasons." *Id.* (quoting *Alexander*, 822 F. Supp. at 1115). Although the Court need not necessarily follow this precise five-factor test, DynaFlex addresses the facts relevant to waiver through this lens, as the result is the same regardless of which particular test the Court applies.

### 1. Factors 1, 2 and 3 Strongly Favor Denying the Motion.

"The relevant timeframe for filing a motion to disqualify 'commences when the moving party either first learned or reasonably should have learned of the conflict of interest.'" *Enslein*, 2018 WL 1426361, at *1 (quoting *St. Stanislaus*, 303 S.W.3d at 599) (internal alteration omitted); *see also Cent. Milk Prods. Coop*, 573 F.2d at 992 ("A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion.").

In this case, Ordont learned some time prior to August 16, 2022[1] that Lewis Rice represented DynaFlex regarding the SMILESHARE trademark at issue in this case because, on

---

[1] Although the precise date is unknown, Ordont necessarily learned of Lewis Rice's representation of DynaFlex regarding the SMILESHARE trademark sometime *before* August 16, 2022, when Ms. Heller sent the cease and desist letter to Lewis Rice. Notwithstanding the demonstrably inaccurate Declaration of Ordont's President, Paul Ruzicka, to the contrary (*see* ECF No. 20, at ¶ 74), Ordont appears to have retained Ms. Heller immediately after Lewis Rice declined to represent Ordont in December 2021, as Ms. Heller filed an application for trademark registration

that date of August 16, 2022, Ordont's counsel, Ms. Annette Heller, sent a trademark cease-and-desist letter *to Lewis Rice's* attention, as counsel for DynaFlex.  (Hickey Decl., Ex. A, at ¶ 3 and Ex. A-2 thereto.)  In the letter, Ordont referred to DynaFlex as "your [Lewis Rice's] client," and alleged that DynaFlex's use of the SMILESHARE trademark violated Ordont's SMILESERIES trademark.  (*Id.* at 2.)  The letter to Lewis Rice made no mention of any potential conflict.

After directing the cease and desist letter to Lewis Rice, Ordont, through its counsel, filed a formal opposition to DynaFlex's SMILESHARE trademark applications before the Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office ("USPTO"), and thereafter treated Lewis Rice as proper counsel for DynaFlex in at least all of the following thirty-one (31) exchanges (some of which include multiple exchanges) before the instant motion was filed on July 20, 2023:

|  | DATE | EVENT |
|---|---|---|
| 1. | 2022.09.22 | Ordont's counsel sends Lewis Rice a Petition Opposing DynaFlex's application to register SMILESHARE before the USPTO |
| 2. | 2022.09.28 | Lewis Rice emails Ordont's counsel a settlement proposal |
| 3. | 2022.09.30 | Ordont's counsel leaves a voicemail for Lewis Rice to discuss the settlement proposal |

---

on behalf of Ordont on December 30, 2021.  (*See* Hoy Decl., Ex. B, at ¶ 10 and Ex. B-4 thereto, at 1-2.)  The USPTO then published DynaFlex's SMILESHARE trademark application for opposition on July 26, 2022, and then on August 12, 2022, Ms. Heller filed a request with the TTAB to extend Ordont's time to oppose DynaFlex's trademark application.  (*Id.*, and Ex. B-5 thereto.)  Thus, most likely, Ms. Heller and Ordont were aware of DynaFlex's trademark application, which listed Lewis Rice as DynaFlex's attorney of record before the USPTO, sometime between December of 2021 and July of 2022.  Because the result is the same regardless of whether Ordont learned of the challenged representation in August 2022 or some number of months earlier, the Court need not determine this fact with any greater precision.  August of 2022 is the most recent possible date.

|  | **DATE** | **EVENT** |
|---|---|---|
| 4. | 2022.09.30 | Ordont's counsel and Lewis Rice discuss discovery and settlement issues via phone |
| 5. | 2022.10.31 | Lewis Rice files an Answer denying the Opposition and serves it on Ordont's counsel |
| 6. | 2022.11.30 | Ordont's counsel asks Lewis Rice its availability for a discovery conference in the Opposition or whether Lewis Rice "consider[s] our prior discussions covering the matter?" |
| 7. | 2022.11.30 | Lewis Rice summarizes via email that the prior discussions regarding "the nature and basis of the parties' claims and defenses and potential resolution/settlement of the case. Initial disclosures are already set under the Board's scheduling order", but offers to have a further discovery conference for the Opposition the following day |
| 8. | 2022.11.30 | Ordont's counsel declines an additional discovery conference, relying on the prior conversations |
| 9. | 2023.01.03 | Lewis Rice serves initial disclosures for the USPTO Opposition proceeding to Ordont's counsel |
| 10. | 2023.01.05 | Lewis Rice asks Ordont's counsel to serve its belated initial disclosure, to which Ordont's counsel responds "waiting to hear back from client" |
| 11. | 2023.01.06 | Ordont's counsel serves upon Lewis Rice Ordont's initial disclosures for the USPTO Opposition proceeding |
| 12. | 2023.01.16 | Ordont's counsel suggests to Lewis Rice having a mediation at Lewis Rice's offices any time in the next week |
| 13. | 2023.01.17 | Lewis Rice conveys DynaFlex's offer to conduct mediation at DynaFlex's offices in Lake St. Louis |
| 14. | 2023.01.17 | Ordont's counsel suggests a mediation at Ordont's counsel's office in Chesterfield |
| 15. | 2023.01.18 | Lewis Rice agrees to logistics of a mediation at Ordont's counsel's offices |
| 16. | 2023.01.24 | Mediation takes place with Lewis Rice in attendance on behalf of DynaFlex |

| | DATE | EVENT |
|---|---|---|
| 17. | 2023.02.06 | Ordont's counsel sends a settlement proposal by email to Lewis Rice detailing the "costs our client estimates it will spend to do a name change" in settlement of the Opposition proceeding |
| 18. | 2023.02.15 | Ordont's counsel sends a follow-up email to Lewis Rice regarding settlement |
| 19. | 2023.02.18 | Lewis Rice responds to Ordont's counsel regarding settlement |
| 20. | 2023.02.19 | Ordont's counsel explains to Lewis Rice, as part of settlement discussions, that Ordont has been using the mark since 2013 |
| 21. | 2023.03.03 | Ordont's counsel sends a further follow-up email to Lewis Rice regarding settlement |
| 22. | 2023.03.17 | Lewis Rice sends Ordont's counsel a response to the settlement offer |
| 23. | 2023.03.17 | Lewis Rice serves discovery to Ordont's counsel as part of the Opposition proceeding |
| 24. | 2023.04.14 | Ordont's counsel emails Lewis Rice, stating "our client filed the matter in Federal Court today" and seeks Lewis Rice's consent to stay the Opposition proceeding, which will moot Ordont's discovery response deadline later that week |
| 25. | 2023.04.14 | Lewis Rice consents to the stay by communicating to Ordont's counsel over email that "our client is willing to waive service to save you the process server costs." |
| 26. | 2023.04.14 | Ordont's counsel responds to Lewis Rice that she will send it to Ordont's co-counsel |
| 27. | 2023.04.17 | Ordont's co-counsel asks Lewis Rice for the waiver form |
| 28. | 2023.04.17 | Lewis Rice sends waiver form to Ordont's co-counsel |
| 29. | 2023.04.18 | Ordont's co-counsel files Lewis Rice-executed waiver of service form with the E.D. of Missouri federal court |
| 30. | 2023.06.16 | Lewis Rice enters its appearance in the E.D. of Missouri federal court, files a partial motion to dismiss and file's DynaFlex's answer to the Complaint |
| 31. | 2023.06.22 | Ordont files Motion for extension of time with Lewis Rice's consent |

(*See* Hickey Decl., Ex. A, at ¶¶ 5-8 and Exs. A-4, A-5, A-6, A-7 thereto; ECF No. 16.)

During all of these exchanges, a single time during a phone call on or about September 30, 2022, Ms. Heller inquired as to the possibility of a conflict in this trademark matter given Lewis Rice's prior representation of Ordont, and Lewis Rice immediately explained that there was no conflict and why. (*See id*. at ¶ 9). After that conversation, twenty-seven (27) of the above detailed thirty-one (31) exchanges took place, all without objection to Lewis Rice's continued representation of DynaFlex in this trademark dispute. Later, during an in-person mediation held on January 24, 2023, Ordont's President (Paul Ruzicka) stated his disappointment that Lewis Rice was representing DynaFlex, after having formerly represented Ordont. However, at no point during the mediation did Ordont's President (and Ordont's counsel, Ms. Heller) ask Lewis Rice to withdraw or to leave the mediation. (*Id.* at ¶ 7.)) Instead, the mediation proceeded that day, with the parties (through their designated counsel) discussing settlement options for weeks thereafter. Indeed, after that mediation, fifteen (15) of the above-detailed thirty-one (31) exchanges took place. (*See supra*, at 8.)

In other words, during the entire time from August 2022 through April 2023 that Ordont proceeded before the USPTO to oppose DynaFlex's trademark applications for SMILESHARE (before abruptly moving this trademark dispute to federal court after being served with discovery before the TTAB), Lewis Rice was attorney of record for DynaFlex opposite Ordont. Ordont did not move to disqualify Lewis Rice as counsel for DynaFlex at any point during that eight month period where the parties were litigating this trademark dispute before the TTAB. Notably, the TTAB has an express procedure set forth in its rules to address the potential disqualification of counsel:

> If a party to an inter partes proceeding before the Board believes that a practitioner representing another party to the proceeding should be disqualified (due, for example, to a conflict of interest …), the party may file a petition to disqualify the practitioner.   … When a petition to disqualify is filed in connection with a proceeding pending before the Board, the Board immediately issues an action suspending proceedings in the case and advising the parties that no additional papers should be filed by the parties until further notice, pending consideration of the petition.

Trademark Trial and Appeal Board Manual of Procedure ("TBMP") § 513.02; *see also* 37 C.F.R. § 11.19(c).  Despite the availability of this procedure, Ordont never made such a request.  Instead, Ordont let DynaFlex proceed with its chosen counsel, Lewis Rice, through the TTAB pleading, initial disclosure and discovery phases.  Further, Ordont continued to let Lewis Rice proceed before this Court for months thereafter, allowing Lewis Rice to accept service (including the undersigned counsel signing the waiver of service filed by Ordont's counsel with this Court) [ECF No. 6], enter counsel's appearances [ECF Nos. 10, 11], file DynaFlex's corporate disclosure statement [ECF No. 12], prepare and file DynaFlex's Answer, move to dismiss in part Ordont's Complaint [ECF Nos. 13, 14, 15], and consent to Ordont's request for an extension of time to respond to DynaFlex's motion to dismiss [ECF No. 16], before Ordont finally sought a disqualification.

Where, as here, a party waits many months—such as the at least **eleven-month delay** here—after learning of the challenged representation before filing a motion to disqualify, such a motion is properly denied as untimely.  Decisions are legion in this regard.  *See, e.g.*, *Mehrle v. Mehrle,* 813 S.W.2d 886, 890 (Mo. Ct. App. 1991) (denying motion to disqualify where party waited **eight** months (from September 1989 until May 1990) to file the motion); *Lankford v. Clarendon Nat'l Ins. Co.*, No. 11-4159-CV-SW-RED, 2011 WL 13234169, at *2 (W.D. Mo. Oct. 4, 2011) (holding that motion to disqualify was untimely where "all of the events that reasonably lead [movant] to believe an attorney-client relationship existed between it and

[opposing party's counsel] occurred" *ten* months before motion to disqualify was filed); *Geissal*, 92 F. Supp. 2d at 947 ("Thus, the delay in filing the motion to disqualify is *eleven* months, a length of time which this Court has taken into account when denying other motions to disqualify." (emphasis added) (citation omitted)); *Medicine Shoppe Int'l, Inc. v. REBS Co.,* 737 F. Supp. 70, 72 (E.D. Mo. 1990) (denying motion to disqualify filed nearly a *year* after alleged conflict was known as untimely); *In re Marriage of Duvall*, 67 S.W.3d 736, 742 (Mo. Ct. App. 2002) (affirming denial of motion to disqualify not filed until *twelve* months after party learned of challenged representation); *In re Metoprolol Succinate Patent Litig.*, 2005 WL 1661509, at *4 (denying motion to disqualify based on unreasonable *thirteen*-month delay); *Shrum,* 661 S.W.2d at 48 (holding that motion was untimely when defendant moved to disqualify *nineteen* months after the suit was filed and after case was tried, and defendant undisputedly was aware of conflict when case was filed against him and had even objected to potential conflict in a deposition months before filing motion to disqualify); *State ex rel. Wallace v. Munton,* 989 S.W.2d 641, 647 (Mo. Ct. App. 1999) (noting that the complaining party did not file his motion to disqualify until almost *two years* after he filed his petition).

In contrast, although courts have not articulated a bright-line, quantitative test for assessing timeliness, motions held to be timely were typically filed within *one month* of learning of the challenged representation. *See, e.g.*, *Bartis v. Biomet, Inc.*, No. 4:13-CV-00657-JAR, 2021 WL 1967376, at *3 (E.D. Mo. May 17, 2021) (holding that one-month delay from learning of alleged conflict to filing motion to disqualify was not an unreasonable delay constituting waiver); *Bayes v. Biomet, Inc.*, 500 F. Supp. 3d 810, 816 (E.D. Mo. 2020) (same); *St. Stanislaus*, 303 S.W.3d at 600 (holding that two-month delay from receipt of 17,000 pages of discovery revealing basis for motion to disqualify and filing of motion to disqualify was not an unreasonable delay).  In no case

where the court granted a motion to disqualify did a party not only wait over eleven months, but also engage emphatically with the supposedly conflicted counsel the entire time of the dispute, as is the case here.

Ordont's assertion that it "first learned that Lewis Rice represented the Defendant shortly before the parties' pre-litigation mediation" [ECF No. 19, at 13] in January 2023 is not true. Ordont's counsel sent its cease-and-desist letter ***directly to Lewis Rice*** as named counsel for DynaFlex on August 16, 2022, five months earlier.  (Hickey Decl., Ex. A, at ¶ 3 and Ex. A-2 thereto.)  Ordont's counsel communicated with Lewis Rice repeatedly over the ensuing months. (*See supra*, at 6-8.)  Ordont further did not object to Lewis Rice's continued representation at the parties' January 2023 in-person mediation or seek disqualification at that time, instead continuing to try to work through settlement options that day and for weeks thereafter, with multiple exchanges between Ordont's counsel (Ms. Heller) and DynaFlex's counsel (Lewis Rice).  (*Id.*, at ¶ 7; *supra*, at 8.)  Likewise, Ordont's claim that its "first opportunity to object to Lewis Rice's representation" [ECF No. 19, at 13] was on June 16, 2023, when Lewis Rice entered its appearance in this federal court litigation, is belied by the TTAB procedure available to (but not utilized by) Ordont, and Ordont's initial August 2022 cease-and-desist letter directed to Lewis Rice as DynaFlex's counsel, the many communications between Ordont's counsel and Lewis Rice as DynaFlex's counsel over the eight months before the TTAB regarding this trademark dispute.  It is also undermined by the multiple communications between Ordont's counsel and Lewis Rice as DynaFlex's counsel, including accepting service of this very lawsuit in April 2022.

Thus, the first three factors – (1) the length of the delay in bringing the motion to disqualify, (2) when the movant learned of the conflict, and (3) whether the movant was represented by counsel during the delay – weigh strongly in favor of denial based on untimeliness and waiver.

## 2.    *Factors 4 and 5 Strongly Favor Denying the Motion.*

In assessing the timeliness of a motion to disqualify, it is "paramount" that the Court conclude that the movant did not "file its motion in bad faith or solely for strategic purposes." *St. Stanislaus*, 303 S.W.3d at 599 (cleaned up).  Factors four (why the delay occurred) and five (whether disqualification would result in prejudice to the non-moving party) go precisely to this issue and also weigh in favor of denial of the Motion due to untimeliness and waiver.

Although Ordont briefly discusses the issue of waiver at the back end of its Motion, nowhere does Ordont provide an explanation for why it ignored the supposed issue while interacting with Lewis Rice prolifically for nearly a year before bringing its Motion.  This is ostensibly because Ordont has no legitimate reason for its delay, or that it did not believe there was a conflict until filing a motion to disqualify presented a strategic advantage.

Reviewing the timing of Ordont's conduct over the course of the preceding year, Ordont has taken specific, calculated acts to postpone addressing the merits of its claims at least twice. First, it moved the dispute from the USPTO to this Court on the eve of its deadline to respond to DynaFlex's discovery requests.  (*See* Hickey Decl., Ex. A, at ¶ 8.)  Then, Ordont filed this Motion on the eve of its deadline to respond to DynaFlex's Motion to Dismiss.  Thus, it seems the purpose of the delay was delay itself.

Moreover, where, as here, substantial proceedings have occurred during the period of the moving party's delay in bringing the motion to disqualify, the motion is properly denied.  *See, e.g.*, *In re Metoprolol Succinate Patent Litig.*, 2005 WL 1661509, at * 4 (denying motion to disqualify that was not filed until the parties "had completed substantial discovery and Defendants were preparing a motion for summary judgment"); *Enslein*, 2018 WL 1426361, at *4 (concluding that prejudice would result from granting motion to disqualify where challenged counsel was retained over two years prior, the litigation had been proceeding for 18 months, discovery had been

ongoing, and discovery disputes had ensued); *Geissal*, 92 F. Supp. 2d at 948 (concluding disqualification would result in prejudice to defendants where counsel had "invested a large amount of time in learning the details of the case" and, thus, the court would not require the defendants to seek new counsel "who would have to become familiar with the myriad of factual and legal issues"); *Lankford*, 2011 WL 13234169, at *2 (denying motion to disqualify where the parties had engaged in "substantial discovery" and the motion was filed only shortly before the close of discovery). During Ordont's delay, DynaFlex's chosen counsel responded to an opposition proceeding, served initial disclosures, served discovery requests, attended a mediation and engaged in substantive settlement discussions, accepted service of Ordont's Complaint, prepared an Answer, and filed a Motion to Dismiss. At this point well into DynaFlex's defense, it would prejudice DynaFlex greatly to be required to switch to a different law firm.

Thus, factors four and five also support waiver both because the reason for the delay (factor four) seems to be delay itself, and the prejudice to DynaFlex (factor five) would be significant. The Court should deny Ordont's Motion as untimely.

### B. Ordont's Motion Is Also Meritless.

Even if this Motion was timely and there was no prejudicial delay, "[t]he moving party bears the burden of proving that disqualification is required." *Awnings*, 912 F.3d at 1096. That is, "[t]he party seeking disqualification must clearly show that continued representation would be impermissible." *In re Metoprolol Succinate Patent Litig.*, 2005 WL 1661509, at *2; *accord Zurich*, 2016 WL 6083829, at *2 ("The party seeking disqualification carries a heavy burden."). Whether to grant or deny a motion to disqualify rests in this Court's sound discretion. *See Bayes*, 500 F. Supp. 3d at 815 (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1154 (8th Cir. 1999)).

In considering a motion to disqualify, this Court considers both the Missouri Rules, pursuant to Local Rule 12.02, and "standards developed under federal law." *Id.* (citations omitted).

14

"The Eighth Circuit has recognized that a 'party's right to select its own counsel is an important public right and a vital freedom that should be preserved,' and cautioned that 'the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary.'" *Id.* (quoting *Machea Transp.*, 463 F.3d at 833).

Ordont contends that Lewis Rice should be disqualified from representing DynaFlex in this matter because Ordont is a former Lewis Rice client, and this matter involves the same matter as, or a matter substantially related to, Lewis Rice's former representation of Ordont. "To establish a conflict of interest under Rule 4–1.9, a movant must prove that: (1) the attorney had a former attorney-client relationship with the movant; (2) the interests of the attorney's current client are materially adverse to the movant's interests; and (3) the current representation involves ***the same or a substantially related matter*** as the attorney's former representation of the movant." *Id.* at 816 (emphasis added) (quoting *Zerger & Mauer LLP v. City of Greenwood*, 751 F. 3d 928, 932 (8th Cir. 2014)). Ordont, as "[t]he party seeking disqualification[,] bears the burden of proving that the present and prior representations are substantially related." *Id.* at 817 (citing *A.J. by L.B. v. Kierst*, 56 F.3d 849, 859 (8th Cir. 1995). Ordont does not and cannot come close to meeting its burden.

As is most frequently the case, the dispositive inquiry is on the third element, "i.e., whether 'the current representation involves a substantially related matter as the attorney's former representation of the movant.'"[2] *Id.* (quoting *Zerger & Mauer*, 751 F.3d at 932). "The key to the analysis is whether there was a central issue common to both representations." *Enslein*, 2018 WL 1426361, at *4 (quoting *In re Carey*, 89 S.W.3d 477, 494 (Mo. banc 2002)). "The Missouri

---

[2] As to the first two elements of Rule 4-1.9, the parties do not dispute that Ordont is a former client of Lewis Rice and that the present interests of DynaFlex are materially adverse to Ordont's interests.

Supreme Court examines a non-exclusive list of six factors in determining whether the representations are substantially related," *to wit*:

(1)    the case involved the same client and the matters or transactions in question are relatively interconnected or reveal the client's pattern of conduct;

(2)    the lawyer had interviewed a witness who was key in both cases;

(3)    the lawyer's knowledge of a former client's negotiation strategies was relevant;

(4)    the commonality of witnesses, legal theories, business practices of the client, and location of the client were significant;

(5)    a common subject matter, issues and causes of action existed; and

(6)    information existed on the former client's ability to satisfy debts and its possible defense and negotiation strategies.

*Bayes*, 500 F. Supp. 3d at 817 (quoting *In re Carey*, 89 S.W.3d at 494); *accord Enslein*, 2018 WL 1426361, at *4. Each of these factors confirms the inapplicability of Rule 4-1.9 here.

> ### 1.    *The Matters in Question Are Not at All Interconnected (Factor 1), No Commonality of Witnesses, Legal Theories, or Business Practices Exists (Factor 4), and There Are No Common Subject Matter, Issues and Causes of Action (Factor 5).*

Perhaps most telling of the weakness of Ordont's claim of a former client conflict is the complete lack of both interconnectedness and commonality among the prior labor and employment-centric legal services provided to Ordont by Lewis Rice on the one hand, and the current trademark dispute on the other hand.

Lewis Rice labor and employment attorney, John Moellering (now retired), began representing Ordont in August of 2003 with regard to its union negotiations. (Hoy Decl., Ex. B, at ¶ 2.) Lewis Rice's representation of Ordont then, and almost exclusively throughout the periods in which Lewis Rice represented Ordont, related to labor and employment (chiefly union-related) matters, billed under a "General Labor" matter established for Ordont. (*Id.* at ¶¶ 2-3.) This labor and employment work was off-again, on-again, through September of 2018, and then, in December

of 2018, Lewis Rice opened a new matter related to a particular Ordont employee, Bettye Ziegler, but the matter continued only for a few months and focused solely on employment issues (because by that point, Ordont was not unionized in its labor force).  (*Id.* at ¶ 4.)

In April and May of 2019, for the first time since the beginning of the relationship in 2003, Lewis Rice opened a new matter for Ordont called "Keller Lab NDXs" and performed some limited, non-labor and non-employment related legal services to assist Ordont in terminating a broker agreement that had governed Ordont's attempts to merge its business with Keller Labs or engage in an acquisition.  (*Id.* at ¶ 5.)  It was understood in May 2019 that Lewis Rice's engagement for the "Keller Labs NDXs" matter would not continue thereafter, as Ordont terminated its broker agreement then and was prevented from exploring sale of the company for a period of twelve months thereafter.  (*Id*.)  Ordont tries to argue that Ordont shared financial information with Lewis Rice during the course of this matter, but any financial information necessarily became stale in the four year-gap from the close of that matter and the instant case.  *See, e.g.*, Mo. R. Prof'l Conduct 4-1.9, *cmt* 3 ("Information acquired in a prior representation may have been rendered obsolete by the passage of time, a circumstance that may be relevant in determining whether two representations are substantially related.").  In any event, trademark damages (the only possible relevant financial matter in the present case) will hinge on DynaFlex's sales of the alleged infringing goods, which did not occur any time prior to its "intent to use" trademark application in September and October of 2021.  *See* 15 U.S.C. § 1117.  Ordont's stale financial information would not and will not factor into sales by DynaFlex more than two years later.

After the Keller Labs matter ended, the only matter invoiced to Ordont at any time was again the General Labor matter.  (Hoy Decl., Ex. B, at ¶ 6.)  The last legal services provided to

Ordont – under "General Labor" – were in February of 2021.[3]  (*Id.*)  None of this work had anything to do with intellectual property, including zero trademark matters.  (*Id.* at ¶ 11.)  Indeed, Lewis Rice has never represented Ordont with respect to trademark issues or specifically with respect to the trademark SMILESERIES at issue here (*Id.*)[4]  The principal argument Ordont tries to make is that the Rules of Professional Conduct generally require limited scope of engagement agreements to be in writing.  But no such requirement applies to "an initial consultation with any lawyer," such as Mr. Ruzicka's correspondence with Mr. Pezza regarding the potential representation.  *See* Mo. R. Prof'l Conduct 4-1.2(d)(1).

More to the point, however, is that Ordont has always, during the entire time Lewis Rice performed labor and employment-related legal services for Ordont, retained separate legal counsel and third-party services to pursue its trademark work. (Hoy Decl., Ex. B, at ¶¶ 7-10.)   This has been the case for over six decades, since *1960*.  (*Id.*)  That is:

- On June 22, 1960, Ordont Orthodontic Laboratories retained the Law Offices of Jerome A. Gross to file with the USPTO a trademark application, which was signed by Leonard Ruzicka.  (*Id.* at ¶ 7 and Ex. B-1 thereto, at 1.)

---

[3] Ordont cites to other work for other clients, including relatives of Ordont's President, trying to bolster its "general counsel" theory, but other distinct clients cannot form the basis of a conflict of interest with regard to Ordont as a matter of law. Notably, the conflicts memos that Ordont includes with its Motion do not refer to these other clients as affiliated with Ordont, but only with Paul Ruzicka, individually, instead.

[4] Ordont asserts, without support, the immaterial claim that "Lewis Rice represented Plaintiff extensively with respect to the specific product at issue in this trademark infringement case" (ECF No. 19, at 1), but provides no evidence, only broad speculation, that Lewis Rice obtained "confidential information" about Ordont's SmileSeries aligner products and "became familiar with the manufacturing and production processes" for those products in the 2004-2005 time frame.  (ECF No. 20, at ¶¶ 19, 21).  Nothing in Ordont's assertions has anything to do with the instant trademark dispute, which is simply whether *DynaFlex's* "SMILESHARE" usage infringes upon Ordont's "SMILESERIES" trademark, not how Ordont manufactures or produces products.  Such matters are far afield from the garden-variety trademark dispute before the Court here and in no way create a "substantially related" matter to the instant lawsuit.

- Mr. Gross, with Power of Attorney for Ordont, filed on behalf of Ordont another application for trademark registration with the USPTO on June 10, 1969.  (*Id.* at 5.)

- On December 5, 1971, Leonard Ruzicka, President of Prodent Laboratories, Inc., signed an appointment of Mr. Gross as Power of Attorney, which was assigned to Ordont Laboratories, Inc. on October 31, 1972 and filed with the USPTO.  (*Id.* at 11-12.)

- Mr. Gross transmitted an application of Prodent for registration with the USPTO on December 9, 1971.  (*Id.* at 13.)

- On September 28, 1977, Leonard Ruzicka signed an appointment of Mr. Gross as Power of Attorney.  (*Id.* at 18.)

- On September 29, 1977, Mr. Gross submitted to the USPTO an application for registration on behalf of Ordont.  (*Id.* at 19-20.)

- On October 3, 1977, Ordont filed another application for registration with the USPTO.  (*Id.* at 23.)

- Mr. Gross submitted a renewal to the USPTO on behalf of Ordont on June 30, 1978.  (*Id.* at 28.)

- On October 30, 1981, Leonard Ruzicka re-appointed Mr. Gross as Power of Attorney before the USPTO upon renewal of registration.  (*Id.* at 29-30.)

- On May 27, 1983, Robert Ruzicka signed a renewal appointing Mr. Gross as Power of Attorney before the USPTO.  (*Id.* at 31.)

- On May 31, 1983, Mr. Gross submitted a renewal of registration with the USPTO signed by Robert Ruzicka, dated May 27, 1983.  (*Id.* at 32-33.)

- On November 16, 1984, Ordont filed an application to register.  (*Id.* at 36.)

- On November 21, 1991, a registration went abandoned for non-renewal with Mr. Gross as Power of Attorney before the USPTO.  (*Id.* at 37.)

- On May 10, 1993, Leonard Ruzicka signed a renewal appointing Mr. Gross and Carol Hamilton as Power of Attorney before the USPTO.  (*Id.* at 38-39.)

- On June 2, 1993, Mr. Gross filed a renewal before the USPTO.  (*Id.* at 40.)

- On March 28, 1996, a renewal with Mr. Gross listed as the Power of Attorney was filed.  (*Id.* at 45.)

Beginning in 1998, Ordont selected different legal counsel for its trademark matters – the Armstrong Teasdale law firm:

- On March 19, 1998, Paul Ruzicka signed a renewal appointing Andrew Mayfield, John Quinn, Keith Rabenberg, John Beulick, Andrew Hoyne, and Scott Hayden, of the Armstrong Teasdale law firm, as Power of Attorney before the USPTO. (*Id.* at ¶ 8 and Ex. B-2 thereto, at 1-2.)

- On March 20, 1998, Mr. Mayfield filed a renewal on behalf of Ordont. (*Id.* at 3.)

- On April 28, 1998, Paul Ruzicka signed a renewal of registration appointing Andrew Mayfield, John Quinn, Keith Rabenberg, John Beulick, Andrew Hoyne, and Scott Hayden, still of the Armstrong Teasdale law firm, as Power of Attorney before the USPTO. (*Id.* at 5-6.)

- On May 1, 1998, Mr. Mayfield submitted a renewal on behalf of Ordont. (*Id.* at 9.) On May 5, 2000, Mr. Mayfield entered before the USPTO for Ordont. (*Id.* at 11-12.)

- On December 15, 2000, a registration went abandoned, with Mr. Gross listed as Power of Attorney with the USPTO. (*Id.* at 14-15.)

- On January 2, 2002, Paul Ruzicka signed a renewal appointing Mr. Mayfield as Power of Attorney before the USPTO. (*Id.* at 16-17.)

- On June 3, 2003, Mr. Ruzicka signed a renewal appointing Mr. Mayfield as Power of Attorney before the USPTO. (*Id.* at 19-20.)

- On December 27, 2008, February 7, 2009, and April 1, 2016, when some of Ordont's registrations went abandoned for non-renewal, Mr. Mayfield remained as Power of Attorney before the USPTO, never having been removed or replaced by Ordont in favor of any other counsel. (*Id.* at 24-31.)

- On August 23, 2016, Ordont filed its own application to register a trademark, with no attorney of record, signed by Paul Ruzicka individually, copying notificatinos@trademarkengine.com, a third-party online trademark service. (*Id.* at ¶ 9 and Ex. B-3 thereto.) This application was for the SMILESERIES trademark.

There is no record or indication at any time from 1960 onward that Ordont sought Lewis Rice's assistance on any trademark matter, except for Ordont's December 2021 call, which work Lewis Rice declined. (*Id.* at ¶¶ 11-13.)

Accordingly, Ordont's claim that Lewis Rice was its "general counsel and only attorney for two decades" is demonstrably false.  [ECF No. 19, at 1].  Ordont deployed multiple other firms and services for its trademark legal work for many decades, as evidenced by the public records summarized here.  There is no evidence to connect Lewis Rice's labor and employment-related legal services to Ordont from 2003 – 2021 to the specific trademark legal services provided by other firms from 1960 to the present.  Factors one, four, and five cannot support a finding of a former client conflict*.*

> **2.  *No Lewis Rice Lawyer Interviewed Any Witness Who Was Key in Both Cases (Factor 2), No Lewis Rice Lawyer Had Knowledge of Ordont's Relevant Negotiation Strategies (Factor 3), and No Information Existed on the Former Client's Possible Defense and Negotiation Strategies (Factor 6).***

Ordont tries to characterize a brief phone call with an employment attorney at Lewis Rice on December 7, 2022, asking whether or not Lewis Rice could *for the first time in six decades* represent Ordont as trademark counsel, as somehow creating the alleged conflict with regard to the current trademark dispute.  It did not.

Namely, on December 7, 2021 at 9:33 A.M., Mr. Ruzicka called Lewis Rice employment law attorney, Brian Pezza, and left a voicemail.  (Hoy Decl., Ex. B, at ¶ 12.)  Mr. Ruzicka's voicemail was 21 seconds long, and stated only that he had hoped to speak with Mr. Pezza about something:

> Hey Brian, Paul Ruzicka at Ordont Orthodontic Laboratories.  Can you give me a call please when you find it convenient?  1-800-325-3698.  Paul from Ordont.  1-800-325-3698.  Thank you.

(*Id.*)  Mr. Ruzicka did not inform Lewis Rice of any adverse party, or the subject matter of the call.

Sixteen minutes later (at 9:49 A.M.), Mr. Ruzicka emailed Mr. Pezza.  The subject of the email was, "Ordont labs."  The contents of the email stated:

> *Brian*
>
> *Dynaflex, one of my competitors was sued by Invisalign because their name EZAlign for sequential aligners was too similar to theirs.*
>
> *Recently they changed the name to SmileShare* *https://www.dynaflex.com/smileshare-about/*
>
> *Our sequential aligners is called SmileSeries.     Could we discuss this?*
>
> *Paul*

Later that afternoon, at 2:16 P.M., Mr. Ruzicka responded to his own email, providing an image of Ordont's SMILESERIES logo in a photograph with DynaFlex's website reflecting its use of SMILESHARE:

> *Brian*
> *This is our logo*

Mr. Pezza responded four minutes later (at 2:20 P.M.), stating:

> *Paul-I am going to connect with one of our IP guys and get back to you asap. - Brian*

(Exhibit 2 to Declaration of P. Ruzicka, at ECF No. 20.)

Phone records reveal Mr. Pezza called Mr. Ruzicka at 3:39 P.M. the same day. (Hoy Decl., Ex. B, at ¶ 12.)  They spoke for 4 minutes and 24 seconds.  (*Id.*)  Lewis Rice ultimately declined the prospective representation of Ordont for the trademark matter because of a conflict.  Mr. Ruzicka seemed to accept this outcome, later reaching out to Mr. Pezza months later, in April 2022, seeking a referral for an attorney regarding a personal matter.  (*Id.* at ¶ 13.)  Mr. Pezza and Mr. Ruzicka exchanged emails and had a telephone call to discuss the referral sought.  (*Id.*)

Ordont tries to argue that, during a "lengthy" call, before Lewis Rice declined the representation, Mr. Ruzicka shared confidences with Mr. Pezza that separately create a conflict. Since Mr. Pezza is not a trademark lawyer (evidenced by his indication he needed to reach out to one of Lewis Rice's "IP guys" before talking with Mr. Ruzicka), Ordont's arguments make no

practical sense. There is no credible evidence that any Lewis Rice lawyer "interviewed" any witness who was key in both cases (Factor 2), that Lewis Rice had any knowledge of Ordont's relevant negotiation strategies for this trademark dispute (Factor 3), or that Lewis Rice gained any information regarding Ordont's trademark claims or strategies (Factor 6) in the four minute call identified by the available phone records.[5] Mr. Pezza simply responding to Mr. Ruzicka's morning emails with an afternoon phone call cannot be extrapolated to the level of contamination Mr. Ruzicka suggests. There is no conduct in the record that "threatens to work a continuing taint on the litigation and trial." *In re Metroprolol Succinate Patent Litig.*, 2005 WL 1661509, at *2.

For all of these reasons, no conflict existed and the request to disqualify should be denied.

## IV.    **CONCLUSION**

Motions to disqualify counsel are disfavored and subject to "particularly strict scrutiny," *Awnings*, 912 F.3d at 1095, "because disqualification often results in increased expenses, delay in resolution of the proceedings, and always deprives a party of its choice of counsel." *Williams*, 2014 WL 5823112, at *1 (cleaned up). Here, Ordont specifically directed its complaints about DynaFlex's trademark use to Lewis Rice as named counsel for DynaFlex, with full knowledge that Lewis Rice had formerly represented Ordont in unrelated matters and had never represented Ordont in trademark matters. Ordont and its chosen counsel substantively engaged with Lewis

---

[5] In his Declaration, Ordont's President, Paul Ruzicka, provides no specifics about his telephone conversation with Mr. Pezza, but instead speaks in generalities, claiming they discussed "the specifics of Lewis Rice's legal representation of Ordont with regard to Defendant's infringement of Ordont's intellectual property," a "general[] discuss[ion] [of] Ordont's potential claims and litigation strategy," and "Ordont's history with DynaFlex." (*See* ECF No. 20, at ¶ 65.) Mr. Pezza is a labor and employment attorney; he does not practice trademark law. (*See* https://www.lewisrice.com/brian-p-pezza/ (last accessed Aug. 17, 2023).) That Mr. Pezza would engage in a legally substantive conversation regarding a potential trademark representation well outside his practice area strains credulity beyond the breaking point.

Rice as DynaFlex's chosen counsel for many months before the USPTO and TTAB, exchanging discovery and even participating in an in-person mediation with Lewis Rice as counsel for DynaFlex.  Ordont and its counsel continued such engagement with Lewis Rice as DynaFlex's counsel for months thereafter, discussing settlement options, the filing of the instant lawsuit, service issues, and motion practice.  To now claim a conflict rising to the level of counsel disqualification is beyond timely and clearly without merit.

Defendant DynaFlex therefore respectfully requests the Court deny Plaintiff Ordont's Motion to Disqualify and grant such other and further relief that the Court should deem just and proper.

Dated: August 17, 2023                    Respectfully submitted,

                                          **LEWIS RICE LLC**

                                          By: /s/ Bridget Hoy
                                              Michael J. Hickey, 47136(MO)
                                              Bridget Hoy, 50733(MO)
                                              600 Washington Ave., Suite 2500
                                              St. Louis, Missouri 63101
                                              314-444-7837 (telephone)
                                              314-612-7837 (facsimile)
                                              mhickey@lewisrice.com
                                              bhoy@lewisrice.com

                                              *Attorneys for Defendant*
                                              *Ortho Solutions, LC d/b/a DynaFlex*