UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ORDONT ORTHODONTIC LABORATORIES, INC., ) ) ) | |
| Plaintiff, ) | |
| v. ) | Case No. 4:23-cv-00468-SEP |
| ) | |
| ORTHO SOLUTIONS, LC, *doing business as* DYNAFLEX, ) ) ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Before the Court is Plaintiff's Motion to Disqualify, Doc. [19]. For the reasons set forth below, the motion is denied.

**FACTS AND BACKGROUND**

This is a trademark infringement suit. Plaintiff Ordont Orthodontic Laboratories, Inc., has brought various federal and state trademark claims against Defendant Dynaflex. Plaintiff uses the trademark "SMILESERIES" to sell and market an orthodontic appliance known as an aligner tray. *See* Doc. [1] ¶ 1. Defendant also sells aligner trays and markets them using the name "SMILESHARE." *See* Doc. [1] ¶ 2. After initially contesting the SMILESHARE trademark before the United States Patent and Trademark Office (USPTO) Trademark Trial and Appeal Board (TTAB), Plaintiff filed this case in federal court on April 14, 2023. On July 20, 2023, Plaintiff filed a motion to disqualify the law firm Lewis Rice, LLC, from representing Defendant in this matter due to a conflict of interest. *See* Doc. [19]. Plaintiff first sought Lewis Rice's disqualification under Missouri Supreme Court Rule 4-1.9 which outlines the duties owed to former clients. Mo. S. Ct. R. 4-1.9. Plaintiff alleged that "Lewis Rice was Plaintiff's general counsel and only attorney for two decades . . . [, and] Lewis Rice represented Plaintiff extensively with respect to the specific product at issue in this trademark infringement case." Doc. [19]. at 1. In its Reply, Plaintiff altered its position and instead argued for Lewis Rice's disqualification under Rule 4-1.7 which governs conflicts of interest with current clients. *See* Doc. [26] at 1, 6; Mo. S. Ct. R. 4-1.7.

## LEGAL STANDARD

"The decision to grant or deny a motion to disqualify an attorney rests in the discretion of the [district] court . . . ." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1154 (8th Cir. 1999) (quoting *Harker v. Comm'r*, 82 F.3d 806, 808 (8th Cir. 1996)). To determine whether counsel should be disqualified, the Court looks to (1) "the Rules of Professional Conduct adopted by the Missouri Supreme Court," E.D. Mo. L.R. 12.02, and (2) "standards developed under federal law." *Bayes v. Biomet, Inc.*, 500 F. Supp. 3d 810, 815 (E.D. Mo. 2020) (quoting *Dalton v. Painters Dist. Council No. 2*, 2011 WL 1344120, at *4 (E.D. Mo. Apr. 8, 2011). "The moving party bears the burden of proving that disqualification is required." *Awnings v. Fullerton*, 912 F.3d 1089, 1096 (8th Cir. 2019). "Because of the potential for abuse by opposing counsel, disqualification motions should be subjected to particularly strict scrutiny." *Id*. at 1095 (cleaned up). "The Eighth Circuit has recognized that a 'party's right to select its own counsel is an important public right and a vital freedom that should be preserved,' and cautioned that 'the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary.'" *Bayes*, 500 F. Supp. at 815 (quoting *Macheca Transp. Co. v. Phila. Indem. Co.*, 463 F.3d 827, 833).

## DISCUSSION

Plaintiff waived its right to seek disqualification. "A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion." *Cent. Milk Producers Coop. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 992 (8th Cir. 1978). Litigants are not allowed "to delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of a case has been completed." *Id*.

### I.   Plaintiff discovered the potential conflict in August 2022.

The parties disagree about when Plaintiff discovered the potential conflict of interest. Defendant contends that Plaintiff was knowingly litigating this matter against Defendant represented by Lewis Rice at least as long ago as August 16, 2022, when Plaintiff's counsel, Ms. Annette Heller, sent a trademark cease-and-desist letter to Lewis Rice attorney, Michael J. Hickey, "refer[ring] to DynaFlex as 'your [Lewis Rice's] client,' and alleg[ing] that DynaFlex's use of the SMILESHARE trademark violated Ordont's SMILESERIES trademark." Doc. [25] at 6; *see* Docs. [25-1] at 2-3, [25-1] at 12-14. Defendant also alleges a telephone conversation "on

2

or about September 30, 2022," in which Heller "inquired as to the possibility of a conflict in this trademark matter given Lewis Rice's prior representation of Ordont, and Lewis Rice immediately explained that there was no conflict and why." Doc. [25] at 9; *see* Doc. [25-1] at 5. And Defendant enumerates 27 exchanges between the parties thereafter, including a mediation, without Plaintiff lodging any formal objection to Lewis Rice's representation of Defendant. Doc. [25] at 6-8.

Plaintiff argues that it "first learned that Lewis Rice represented the Defendant shortly before the parties' pre-litigation mediation [on January 24, 2023]." Doc. [19] at 13. But in the Declaration of Ordont's President, Paul Ruzicka, Mr. Ruzicka states he "did not learn that Ordont's attorneys were representing the Defendant in this matter against Ordont until after [he] hired Attorney Annette Heller," which he estimates was months after Lewis Rice declined to represent Plaintiff. Doc. [20] ¶¶ 73-74. Defendant counters that it could not have taken months for Plaintiff to hire Ms. Heller, because Lewis Rice declined to represent Plaintiff in December 2021, *see* Doc. [25] at 21-22, and "Ms. Heller filed an application for trademark registration on behalf of Ordont on December 30, 2021." Doc. [25] at 5 n.1; *see* Doc. [25-2] at 97-99. Ms. Heller then filed a request with the TTAB on August 12, 2022 "to extend Ordont's time to oppose DynaFlex's trademark application." Doc. [25] at 5 n.1; *see* Doc. [25-2] at 119.

Considering the parties' respective positions, the Court agrees with Defendant that "the Court need not determine this fact with any greater precision. August of 2022 is the most recent possible date." Doc. [25] at 5 n.1.

II. **The amount of delay runs from the time Plaintiff learned about the potential conflict—i.e., no later than August 2022.**

The parties also disagree as to the relevant timeframe for filing a motion to disqualify. Defendant argues Plaintiff waited at least 11 months to bring this motion, measuring the amount of delay from the time Plaintiff learned of the potential conflict in August 2022. *See* Doc. [25] at 10. Defendant argues Plaintiff could have moved for disqualification when the parties were litigating this dispute before the TTAB from August 2022 to March 2023. *See* Doc. [25] at 9-10. The TTAB has the following procedure available for the disqualification of counsel.

> If a party to an inter partes proceeding before the Board believes that a practitioner representing another party to the proceeding should be disqualified (due, for example, to a conflict of interest …), the party may file a petition to disqualify the practitioner. … When a petition to disqualify is filed in connection with a proceeding pending before the Board, the Board immediately issues an action suspending proceedings in the case and

3

  advising the parties that no additional papers should be filed by the parties until further notice, pending consideration of the petition.

Trademark Trial and Appeal Board Manual of Procedure ("TBMP") § 513.02.

  Plaintiff, on the other hand, argues that its "first opportunity to object to Lewis Rice's representation of Defendants in this matter was on June 16, 2023, when Lewis Rice filed its Entry of Appearance." Doc. [19] at 13. Plaintiff concedes in its Reply that it "*could* have raised this motion before the TTAB, a tribunal" but contends that it was "*required* to raise the motion within a reasonable time of the commencement of this litigation." Doc. [26] at 8 n.4 (emphasis added).

  Plaintiff's suggestion that the delay should be measured from when this particular action commenced rather than when Plaintiff learned of the potential conflict is in tension with the rationale for prohibiting untimely motions to disqualify—i.e., to prevent litigants from using such motions "later as a tool to deprive his opponent of counsel of his choice after substantial preparation of a case has been completed." *Cent. Milk Producers*, 573 F.2d at 992. Thus, courts in other districts have found that the time should be measured from the point at which the party learned of the potential conflict rather than when the complaint was filed. *See SE Prop. Holdings, LLC v. Phillips*, 2016 WL 6246890, at *4 (N.D. Fla. May 24, 2016) ("[C]ases have held that pre-suit actions or events are relevant in determining when the movant became aware of the conflict and the amount of delay that resulted.") (collecting cases); *Tibbott v. Northern Cambria School District*, 2017 WL 2570904, at *4 (W.D. Penn. June 13, 2017) (calculating 16-month delay from the time counsel learned of the alleged conflict during a hearing before the School Board); *see also Enslein v. Di Mase*, 2018 WL 1426361, at *1 ("The relevant timeframe for filing a motion to disqualify 'commences when the moving party either first learned or reasonably should have learned of the . . . conflict of interest.'") (quoting *Polish Roman Cath. St. Stanislaus Par. v. Hettenbach*, 303 S.W.3d 591, 599 (Mo. Ct. App. 2010)). The Court finds those cases persuasive.

  Plaintiff's attempts to explain the delay also miss the mark. First, Plaintiff argues that it "promptly and repeatedly raised its objections to Lewis Rice's representation of Defendants," noting specifically the mediation in January 2023, during which Plaintiff "objected to Lewis Rice's presence." Doc. [19] at 13. Mr. Ruzicka, Ordont's president, claims to have "expressed extreme displeasure that Ordont's general counsel of two decades was now representing

4

Ordont's competitor in a case against Ordont . . . [, and] told the attorney that Lewis Rice should be ashamed of itself" at that mediation.  Doc. [20] ¶ 75.  But Plaintiff does not claim to have asked Lewis Rice to withdraw or to leave the mediation.  *See* Doc. [25] at 9; Doc. [25-1] at 4.  As Defendants note, "the mediation proceeded that day, with the parties (through their designated counsel) discussing settlement options for weeks thereafter."  Doc. [25] at 9.  In its Reply, Plaintiff argues "'Rule 4-1.7(b)(3) does not preclude a lawyer's multiple representation of adverse parties to a mediation,'" so if the Lewis Rice attorney "'reasonably believe[d] that the lawyer [would] be able to provide competent and diligent representation to each affected client' pursuant to Rule 4-1.7(b)(1), Plaintiff could . . . not have raised [this motion] in the mediation."  Doc. [26] at 8 n.4.  First, Rule 4-1.7(b) also requires that "each affected client give[ ] informed consent, confirmed in writing," so Plaintiff could have sought Lewis Rice's disqualification by raising the issue and refusing to consent.  Mo. S. Ct. R. 4-1.7(b)(4).  Second, and more to the point, the parties continued to engage in settlement conversations following the mediation, despite the availability of the TTAB procedure for disqualifying counsel.

       Next Plaintiff argues it only realized litigation was necessary and that "Lewis Rice already had access to much of the information that Plaintiff did not want shared with Defendant" when Lewis Rice served discovery as part of the TTAB proceeding on March 17, 2023.  Doc. [26] at 9.  Plaintiff then filed its federal lawsuit expecting "Lewis Rice [to] either seek its waiver or properly decline to represent either party in the litigation."  *Id*.  When Lewis Rice failed to do either and filed an entry of appearance on June 16, 2023, Plaintiff "immediately began working on this motion."  *Id*.

       The same sort of explanation was rejected in *In re Metoprolol Succinate Patent Litigation*, 2005 WL 1661509 (E.D. Mo. July 8, 2005).  There, Plaintiff attempted to explain its 13-month delay in bringing a motion to disqualify counsel "by suggesting that the scope of the lawsuit changed when Defendants sought to compel litigation documents concerning metoprolol."  *Id*. at *4.  There, the court explained:  "This request did not change the fundamental fact of whether [Defendant] had material confidential information about [Plaintiff] on October 29, 2003, when [Plaintiff] first raised the conflict concern with [Defendant]."  *Id*. (emphasis omitted).  The court concluded that "[i]t was [Plaintiff's] obligation to follow-up its accusations of a client conflict in a timely manner," and their failure to do so constituted waiver.  *Id*.

5

Here, Plaintiff learned of the potential conflict no later than August 2022 and it moved to disqualify Lewis Rice 11 months thereafter. As Plaintiff has failed to justify excluding any part of that time from the calculation, the Court finds that proper measure of the length of Plaintiff's delay in bringing its motion to disqualify is 11 months.

### III. **Plaintiff's delay in filing this motion is unreasonable.**

Courts in this district have denied motions to disqualify that were filed after delays of comparable magnitude to this one. *Compare Geissal v. Moore Med. Corp.*, 92 F. Supp. 2d 945, 947 (E.D. Mo. 2000) ("Thus, the delay in filing the motion to disqualify is eleven months, a length of time which this Court has taken into account when denying other motions to disqualify."), *and Metroprolol Succinate*, 2005 WL 1661509, at *4 (an unreasonable thirteen-month delay constituted waiver of Plaintiff's right to bring its motion to disqualify counsel) *with Bartis v. Biomet, Inc.*, 2021 WL 1967376, at *3 (E.D. Mo. May 17, 2021) (no waiver where the party brought the motion to disqualify one month after learning about the potential conflict).

But the length of the delay is not the only consideration in determining whether a party waived their right to bring a motion to disqualify. Plaintiff is quite right that Eighth Circuit precedent and cases in this district have considered both delay and "the prejudice that a nonmoving party would face if a motion were granted." Doc. [26] at 8; *see Cent. Milk Producers*, 573 F.2d at 992 ("This court will not allow a litigant to delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of a case has been completed."); *Metroprolol Succinate*, 2005 WL 1661509, at *4 (finding waiver where Plaintiff waited 13 months to bring the motion to disqualify and "the parties had completed substantial discovery and Defendants were preparing a motion for summary judgement"); *Geissal*, 92 F. Supp. 2d at 948 ("The Court will not require defendant[s] . . . to seek separate counsel, who would have to become familiar with the myriad of factual and legal issues, at this late stage in the litigation process.").

Plaintiff contends that Defendant would not be prejudiced because there has been "virtually no preparation of the parties' cases." Doc. [26] at 9. That claim is inconsistent with the record. Prior to the filing of this action in federal court, the parties filed pleadings with the TTAB, engaged in settlement discussions, served initial disclosures, and participated in mediation. *See* Doc. [25-1] at 20-27, 32-38, 40-102. Lewis Rice served discovery on March 17, 2023, and Plaintiff filed its federal lawsuit on April 14, 2023. *See* Doc. [25-1] at 83; Doc. [1].

Defendant then waived service, filed an Answer, and filed a Motion to Dismiss.  *See* Docs. [6], [13], [15].  Only then did Plaintiff file its motion to disqualify.  Doc. [19].  Defendant had Lewis Rice as counsel for at least 11 months of back-and-forth between the parties to this litigation.  At no point during those 11 months did Plaintiff seek to disqualify Lewis Rice.  Compelling Defendant to find new counsel that far along in the litigation would be prejudicial.

Because the Court finds that Plaintiff waived its right to bring this motion, it does not reach the motion's substance.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Disqualify Counsel Lewis Rice, Doc. [19], is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Ruling, Doc. [38], is **DENIED** as moot.

Dated this 30th day of September, 2024.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE